IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL RODRIGUEZ, | ) | |
| | ) | Case No. 22 C 6141 |
| Plaintiff, | ) | |
| | ) | Hon. Edmond E. Chang |
| v. | ) | District Judge |
| | ) | |
| REYNALDO GUEVARA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**CITY DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S AND COUNTY DEFENDANTS' AMENDED
JOINT MOTION FOR FINDING OF GOOD FAITH SETTLEMENT**

Defendants, CITY OF CHICAGO (the "City"), GERI LYNN YANOW, as Special Representative of ERNEST HALVORSEN, deceased, ROBERT BIEBEL, EDWARD MINGEY, LEE EPPLEN, EDWARD STRANDBURG, JANICE RABBIT, as Special Representative of LOUIS RABBIT, deceased, GERI LYNN YANOW, as Special Representative of NOEL CAPORUSSO, deceased (the "Officer Defendants"), and REYNALDO GUEVARA (collectively, the "City Defendants"), by their undersigned attorneys, respectfully submit the following Response in Opposition to the Amended Joint Motion for Finding of Good Faith Settlement filed by Plaintiff, DANIEL RODRIGUEZ, and Defendants, former ASA PATRICK WALSH and COOK COUNTY (the "County Defendants") (collectively, the "Settling Parties") (Dkt. 215). In support thereof, the City Defendants state:

**INTRODUCTION**

In September 2024, Plaintiff and the County Defendants agreed to settle all claims against the County Defendants pursuant to the terms of the Settlement Agreement. (Dkt. 215-1). In consideration for Plaintiff dismissing and releasing all pending claims against the County Defendants with prejudice, Plaintiff will

receive a payment of $3,100,000. (*Id.* at ¶¶ 3, 4.1). Paragraph 4.3 of the Settlement Agreement contains an allocation clause that earmarks the settlement payment to Plaintiff shall be allocated as follows:

> First, $3,000,000 (three million dollars) shall be allocated toward Plaintiff's injury of pretrial incarceration flowing from his Fourth Amendment malicious prosecution claim (damages suffered as a result of pretrial incarceration from the time of a judicial finding of probable cause to the start of the Plaintiff's criminal trial). Second, $100,000 (one-hundred thousand dollars) shall be allocated to 42 U.S.C. 1988 fees and costs incurred by the Plaintiff and his attorneys, Loevy & Loevy, solely in pursuit of claims against the County Defendants and which did not advance the claims against the City Defendants.

(*Id.* at ¶ 4.3).

Plaintiff is moving this Court to approve that none of the settlement proceeds go toward paying Plaintiff's compensatory damages for any of the other six claims brought against ASA Walsh, including Plaintiff's Fifth and Fourteenth Amendment coerced confession—where ASA Walsh is alleged to have personally participated in the interrogation and fabricating Plaintiff's statement—and Plaintiff's due process claims (Counts I and II)—where ASA Walsh is accused of taking a lead role in questioning witnesses and fabricating false witness statements that incriminated Plaintiff.

ASA Walsh was the Felony Review Assistant Cook County State's Attorney who approved the murder charge against Plaintiff after interviewing Plaintiff and memorializing his statement in the presence of a court reporter. ASA Walsh's signature, as well as Plaintiff's, is affixed to every page of Plaintiff's court reported statement. Plaintiff's confession was used against Plaintiff in his criminal case. ASA Walsh also questioned key eyewitnesses, Jason Rivera and David Velasquez, memorializing each of their statements, separately, in handwritten statements. ASA Walsh's signature is affixed to each page of both eyewitnesses' handwritten statements. Additionally, the settlement proceeds do not go toward Plaintiff's other claims against ASA Walsh – *i.e.*, failure to intervene (Count IV), malicious prosecution (Count VII), intentional infliction of emotional distress (Count VIII) and willful and wanton conduct (Count IX).

Now, the Settling Parties move this Court for a finding that the Settlement Agreement, artificially limiting ASA Walsh's role to avoid a setoff, was reached in good faith. The Court must deny this motion. The allocation crafted in paragraph 4.3 is not in good faith and is plainly a purposeful attempt by Plaintiff, with the acquiescence of the County Defendants to prevent the City Defendants from rightfully setting off this settlement from any compensatory damages a jury might award on any claims – most particularly, the coerced/false confession and due process claims – left unresolved by the Settlement Agreement.

## FACTUAL BACKGROUND

On November 4, 2022, Plaintiff filed a multi-count civil rights lawsuit against the City Defendants and County Defendants. (Dkt. 1). Plaintiff's claims stem from his arrest and prosecution for the 1991 murder of Jose Hernandez, Jr. Specifically, Plaintiff was arrested for murder on May 11, 1991, and was released on bond on September 27, 1991, resulting in 139 days in pretrial detention. However, Plaintiff's bond was revoked when he was arrested on an unrelated armed robbery charge on September 15, 1992, which he was convicted of on February 10, 1993, resulting in an additional 148 days in pretrial detention. In total, Plaintiff spent 287 days in detention prior to his conviction on the armed robbery, which he plead guilty to and received a sentence of 10 years ("pretrial detention"). Subsequently, Plaintiff was convicted of murder on July 29, 1993, and sentenced to 25 years consecutive with the armed robbery. On August 2, 1993, he also pled guilty and was convicted for possession of contraband in Cook County Jail, for which he was sentenced to 4 years concurrent with the armed robbery and murder sentences. Plaintiff's armed robbery and possession convictions were not vacated, and therefore, his time in custody for those valid convictions should offset his time in custody for the murder conviction. Accordingly, Plaintiff was incarcerated 12.5 years factoring in good time credit and offsetting the time of the valid armed robbery and possession convictions ("postconviction detention"). In total, for purposes of this matter, Plaintiff was incarcerated for a little over 13

3

years, approximately 6% of which was spent in pretrial detention and 94% of which was spent in postconviction detention.

The operative First Amended Complaint ("FAC"), filed on October 6, 2023, alleges that Officer Defendants and ASA Walsh violated Plaintiff's due process rights under the Fourteenth Amendment (Count I); that Officer Defendants and ASA Walsh violated Plaintiff's rights under the Fifth and Fourteenth Amendments by coercing a false confession from him (Count II); that Officer Defendants and ASA Walsh maliciously prosecuted Plaintiff and unlawfully detained him in violation of federal and state law (Counts III and VII); that Officer Defendants and ASA Walsh failed to intervene in the violation of Plaintiff's rights (Count IV); that Officer Defendants conspired to violate Plaintiff's rights in violation of federal and state law (Counts V and X); that Officer Defendants and ASA Walsh intentionally inflicted emotional distress in violation of state law (Count VIII); and that Officer Defendants and ASA Walsh engaged in willful and wanton conduct in violation of state law (Count IX). (Dkt. 99). The FAC also alleges a policy and practice *Monell* claim (Count VI) and *respondeat superior* (Count XI) against the City of Chicago; and an indemnification claim (Count XII) against the City of Chicago and Cook County. (*Id.*).

As it pertains to ASA Walsh's role in Plaintiff's alleged wrongful prosecution and conviction, Plaintiff alleges that prior to the existence of probable cause, ASA Walsh "manufactured and fabricated a coerced confessions and statements from Plaintiff and other witnesses" as well as maliciously prosecuted Plaintiff. (*Id.* at ¶ 23). Specifically, Plaintiff alleges that ASA Walsh took a leading role in the interrogations of key witnesses, Rivera and Velazquez, and fabricated their false statements incriminating Plaintiff. (*Id.* at ¶ 56). Plaintiff also alleges that Walsh was present for and participated in Plaintiff's interrogation and fabricated the false incriminating statement that Plaintiff was forced to sign. (*Id.* at ¶ 76).

In Count I, a due process claim alleging the denial of a fair trial, Plaintiff alleges that ASA Walsh and the other Defendants "individually, jointly, and in conspiracy with one another . . . deprived Plaintiff of his

4

constitutional right to a fair trial and his right not to be wrongfully convicted and imprisoned" by "fabricating witness statements falsely implicating Plaintiff" and "deliberatively withheld exculpatory evidence" that they "had fabricated false identifications of Plaintiff." (*Id.* at ¶¶ 147-48, 152). In Count II (Coerced and False Confession), Plaintiff alleges that ASA Walsh "individually, jointly, and in conspiracy with" others "forced Plaintiff to make false statements involuntarily and against his will, which incriminated him and were used against him in criminal proceedings, in violation of his rights secured by the Fifth and Fourteenth Amendments." (*Id.* at ¶ 159). In Count II, Plaintiff further alleges that ASA Walsh "individually, jointly, and in conspiracy with" others "used physical violence and extreme psychological coercion in order to force Plaintiff to incriminate himself falsely and against his will in a crime he had not committed, in violation of his right to due process secured by the Fourteenth Amendment." (*Id.* at ¶ 160). In Count IV (Failure to Intervene), Plaintiff alleges that Walsh "stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though [he] had the duty and the opportunity to do so." (*Id.* at ¶ 174). In Count VIII (Intentional Infliction of Emotional Distress), Plaintiff alleges that Walsh's actions, omissions, and conduct "were extreme and outrageous," "rooted in an abuse of power and authority," and "undertaken with the intent to cause, or were in reckless disregard of the probability that [his] conduct would cause, severe emotional distress to Plaintiff." (*Id.* at ¶ 205). Lastly, in Count IX (Willful and Wanton Conduct), Plaintiff alleges that Walsh "had a duty to refrain from willful and wanton conduct" and notwithstanding that duty, "acted willfully and wantonly through a course of conduct that showed an utter indifference to, or conscious disregard of, Plaintiff's rights." (*Id.* at ¶¶ 208-09).

There are two malicious prosecution claims, one federal and one state law claim. In Count III, the federal malicious prosecution claim, Plaintiff alleges that ASA Walsh "individually, jointly, and in conspiracy with" others,

> accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so and in spite of the fact that they

>> knew Plaintiff was innocent, in violation of his rights secured by the Fourth and Fourteenth Amendments.
>
> In so doing, these Defendants maliciously prosecuted Plaintiff and caused Plaintiff to be deprived of his liberty without probable cause and to be subjected improperly to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

(*Id.* at ¶¶ 168-69).

In Count VII, the state law malicious prosecution claim, Plaintiff alleges, nearly verbatim, that ASA Walsh "individually, jointly, and in conspiracy with" others,

> accused Plaintiff of criminal activity and exerted influence to initiate and to continue and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so.
>
> In so doing, the Defendants caused Plaintiff to be subjected improperly to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

(*Id.* at ¶¶ 199-200).

## LEGAL STANDARD

The Illinois Joint Tortfeasor Contribution Act (the "Act") provides the legal framework for determining whether the Amended Joint Motion for Finding of Good Faith Settlement should be granted. The Act creates a statutory right of contribution but extinguishes the right of contribution if the tortfeasor and the plaintiff have entered into a good-faith settlement. *Koh v. Village of Northbrook*, No. 11 C 02605, 2020 WL 6681352, at *5 (N.D. Ill. Nov. 12, 2020). The settling tortfeasor and the plaintiff may ask a court to make a finding of a good-faith settlement in order to confirm the end of the remaining defendant's right to contribution. *Id.* (citing *Fox v. Barnes*, No. 09 C 5453, 2013 WL 2111816, at *6-9 (N.D. Ill. May 15, 2013). The "good faith" of a settlement is the only limitation the Act places on the right to settle. *Johnson v. United Airlines*, 203 Ill.2d 121, 128 (2003). Illinois courts interpreting the "good faith" requirement have placed the initial burden to make a preliminary showing of good faith with the settling parties. *Id.* at 132. This burden can be satisfied by showing the existence of a legally valid settlement agreement supported by effective

consideration. *Id.* A party challenging the good faith of a settlement agreement must show the lack of good faith by a preponderance of the evidence. *Id.*

Courts primarily consider four non-exclusive factors when making good faith determinations: (1) whether the amount paid by the settling tortfeasor was within a reasonable range of the settlor's fair share; (2) whether there was a close personal relationship between the settling parties; (3) whether the plaintiff sued the settler; and (4) whether a calculated effort was made to conceal information about the circumstances surrounding the settlement agreement. *Piercy v. Whiteside Cty., Illinois*, No. 14 CV 7398, 2016 WL 1719802, at *4 (N.D. Ill. Apr. 29, 2016); *LaJeunesse v. Ford Motor Co.*, 642 F.Supp.2d 835, 838 (N.D. Ill. 2009). A settlement is not in good faith if the agreement "conflicts with the terms of the Act or is inconsistent with the policies underlying the Act." *Id.*; *Johnson*, 203 Ill.2d at 133. The policies underlying the Act are "the encouragement of settlements" along with "*the equitable apportionment of damages among tortfeasors.*" *Bulson v. Helmold*, No. 16 C 50045, 2018 WL 5729752, at *2 (N.D. Ill. Nov. 2, 2018) (emphasis added); *Johnson*, 203 Ill.2d at 133. For this reason, a "settlement [that] shifts a disproportionally large and inequitable portion of the settling defendant's liability onto the shoulders of another" "cannot be construed as a good-faith settlement." *Associated Aviation Underwriters, Inc. v. Aon Corp.*, 344 Ill. App. 3d 163, 177 (1st Dist. 2003). In assessing whether a settlement agreement was made in good faith, no single factor is determinative; rather, "[w]hether a settlement was made in good faith is determined by considering all of the surrounding circumstances." *LaJeunesse*, 642 F.Supp.2d at 838.

## ARGUMENT

**I.      The Settlement Agreement is not consistent with the policy of equitable apportionment of damages among tortfeasors.**

The Settling Parties argue that this Court should find the Settlement Agreement was reached in good faith because it is supported by adequate and reasonable consideration and meets the four factors set forth

7

above.[1] (Dkt. 215, at ¶ 7). The Settling Parties fail to mention the additional requirement that the Settlement Agreement be consistent with the policies underlying the Act, namely the equitable apportionment of damages among tortfeasors, which is a critical consideration in evaluating whether the Settlement Agreement was made in good faith.

Two analogous Northern District of Illinois opinions, one by this Court and one by Judge Pallmeyer, illustrate the inequity attendant to approval of the instant Settlement Agreement. In *Koh v. Village of Northbrook*, a man who was arrested and held in Cook County jail for nearly 4 years before his acquittal on murder charges, sued police officials from the Villages of Northbrook and Wheeling for unlawful detention under the Fourth Amendment, coerced confession under the Fifth Amendment, and malicious prosecution, and his wife sued for loss-of-consortium. 2020 WL 6681352, at *3-4. Prior to trial, the plaintiffs (represented by Loevy and Loevy) agreed to settle *all* of their claims against the Northbrook Defendants for $3,950,000 to be allocated as follows: $200,000 for Mr. and Mrs. Koh's Fourth Amendment claims, $450,000 for attorneys' fees and costs, and $3,300,000 for Mrs. Koh's loss of consortium claim. *Id.* at *4 (emphasis added). The plaintiffs and the Northbrook defendants then moved for a finding of good faith. *Id.*

This Court denied the motion, despite noting a *preliminary* showing of good faith, since the agreement provided for consideration on both sides, and that some of the remaining factors were satisfied.[2] *Id.* at *5. Nonetheless, the Court found that the settlement was not made in good faith based on the "grossly disproportionate and inequitable" allocation of responsibility on some of the claims. *Id.* at *1, 5-6. Emphasizing the dual policy considerations of promoting settlement *and* ensuring equitable apportionment,

---

[1] As to the fourth factor, whether there was a calculated effort to conceal information about the circumstances surrounding the settlement agreement, the City Defendants note that while the settlement may not be a secret now, it was *negotiated* in secret.

[2] As to the first factor, this Court stated that "broadly speaking, the settlement amounts are within a reasonable range for the claims to which the amounts are assigned—though [ ] *not* every claim has an assigned settlement amount. *Koh*, 2020 WL 6681352, at *5. This Court also recognized the presence of a true adversarial relationship amongst the settling parties and that the agreement was not concealed. *Id.*

this Court explained that "the proposed good-faith finding is fatally undermined by the allocation of *zero* of the $3.95 million settlement toward Mr. Koh's Fifth Amendment claim for the coerced confession." *Id.* at *6. "The result of that zero allocation leaves the Wheeling Defendants on the hook—all by themselves—for the *entirety* of any damages that a jury might award on this claim at trial." *Id*. This Court further found that the settlement was not "*within the reasonable range of the settlor's fair share*" because the settlement agreement's allocation, much like the Settlement Agreement in the present matter, was "apparently designed to deny the Wheeling Defendants any set-off on the coerced-confession claim." *Id.* at *7.

Four years prior, in *Piercy v. Whiteside Cty., Illinois, et al.*, No. 14 CV 7398, 2016 WL 1719802 (N.D. Ill. April 29, 2016), the plaintiff, as administrator of decedent's estate (also represented by Loevy & Loevy), brought several § 1983 and state law claims – including deliberate indifference in the denial of medical care, conspiracy and failure to intervene – against County and State correctional institutions and individual employees. The plaintiff settled all claims against the County defendants for $50,000, but the entire payment was allocated to damages suffered prior to the time the non-settling defendants had any contact with the decedent. *Id.* at *4. In opposing plaintiff's motion for a good faith finding, the non-settling defendants argued that it "blatantly allocates the settlement proceeds in an effort to deprive the . . . [non-settling] Defendants of their right to a setoff" and "artificially" separated their liability from that of the settling defendants. *Id.* The District Court refused to find good faith, explaining that "[t]he ACH and Wexford Defendants have raised a valid concern that the settlement agreement between the Plaintiff and the Whiteside County Defendants was allocated in bad faith to preclude a setoff." *Id.* at *5. Such an allocation violated the policy of the Act to equitably apportion damages among tortfeasors, thereby constituting a bad faith settlement. *Id.*

As in *Koh* and *Piercy*, the Settling Parties specifically fashioned an agreement designed to deprive the City Defendants of any setoff from what far and away is the most significant exposure created by the litigation—the period of incarceration *following* the conviction on armed robbery, which accounts for 94% of

9

Plaintiff's time in custody. Instead, the Settling Parties, without in any way tethering the proposed allocation to the facts in this case or supposed harms and losses, ask this Court to allocate all the settlement to Plaintiff's pretrial detention damages caused by malicious prosecution, only under the Fourth Amendment, not state law.

The Settlement Agreement provides Plaintiff with $3 million for 287 days in pretrial detention while allocating ***nothing*** to the ensuing 12.5 years Plaintiff served in state prison after his conviction on armed robbery. This allocation is made despite the fact that Plaintiff's allegations against ASA Walsh that would make the County liable for pretrial detention damages, is the same misconduct that would also make the County liable for postconviction damages—coercion of the confession, fabrication and withholding of evidence, and malicious prosecution. The allegations center on ASA Walsh's alleged role in the coercion of Plaintiff's confession and the fabrication and withholding of exculpatory evidence related to two allegedly false eyewitness statements. And, according to Plaintiff, **at trial,** "[t]he State's case hinged upon Rivera's fabricated statement and Plaintiff's confession." (Dkt. 99, at ¶ 91). Thus, it is illogical that ASA Walsh would be liable for pretrial detention because of those actions, but not postconviction incarceration.

Under Plaintiff's theory, ASA Walsh is every bit as responsible for Plaintiff's postconviction imprisonment as the City Defendants, yet the Settling Parties carve out the settlement payment from those damages. This Court, under comparable circumstances, has rejected a good faith finding where the settlement agreement artificially separated the non-settling defendants' liability in an attempt to deny them any setoff. *Koh*, 2020 WL 6681352, at *7; *see also Piercy*, 2016 WL 1719802, at *5.

Most tellingly, the Settling Parties ask this Court to allocate *all* $3,000,000 "to Plaintiff's injury of *pretrial incarceration* resulting from his **Fourth Amendment** malicious prosecution claim," but not its state law counterpart. (Dkt. 215, at ¶ 2) (emphasis added). As shown above, the allegations are nearly identical. While state law malicious prosecution requires that Plaintiff also show his prosecution ended in a manner indicative of innocence (*Swick v. Liautaud*, 169 Ill. 2d 504, 512 (1996)), that part of the favorable termination

10

element, is independent of any conduct by a Defendant. In other words, if Plaintiff proves that element, he has established it against all Defendants, not just the City Defendants. While the elements of both the federal and state law claims are essentially the same, the state law malicious prosecution damages run the entire length of incarceration, not only pretrial detention. *St. Paul Fire & Marine Insurance Co. v. City of Zion*, 2014 IL App (2d) 131312, ¶ 25 (favorable termination of a malicious prosecution marks the beginning of the judicial system's remediation of the wrong committed, not the commencement of the injury or damage). *See also* Restat 2d of Torts, § 671 ("when the essential elements of a cause of action as for malicious prosecution have been established, the plaintiff is entitled to recover for (a) the harm legally caused by any arrest or imprisonment suffered by him during the course of the proceedings"); 1 Jury Instructions on Damages in Tort Actions § 13.01 (2024) (in considering the question of damages for a finding of malicious prosecution, "you should have regard to any evidence tending to show that plaintiff lost time as a result of the defendant's conduct, the value of such lost time, sums expended in defending the unfounded lawsuit, damage sustained as a result of plaintiff's deprivation of the use of his/her property, any loss of liberty, injury to fame, reputation, character, or social or business standing, injury to his/her credit rating." There is simply no rational way to distinguish the State and Federal malicious prosecution claims.

The Settling Parties' Agreement represents the same lack of good faith as the case in *Koh* where this Court concluded that the settlement was not "*within the reasonable range of the settlor's fair share*" because the settlement agreement's allocation was "apparently designed to deny the Wheeling Defendants any set-off on the coerced-confession claim." 2020 WL 6681352, at *7. The same result is required here.

Moreover, the Settling Parties plainly understand the allocation in paragraph 4.3 does not pass scrutiny. The Settling Parties built in a provision that specifically anticipated a finding that paragraph 4.3 is not in good faith. (Dkt. 215-1, at ¶ 4.5). Per paragraph 4.5 of the Settlement Agreement, the Settling Parties agreed that the settlement "shall not be affected … and remain valid and fully enforceable" should the Court

reject the allocation in paragraph 4.3. In other words, the only purpose of the allocation is to avoid the setoff because the parties agree that the settlement stands without it. (Dkt. 215-1, at ¶ 4.4). Plaintiff is willing to accept that $3 million to cover the entire period of incarceration, demonstrating how artificial it is to limit the settlement just to the 6% of his incarceration that was pretrial detention. Thus, the Settling Parties are not prejudiced by this Court finding the allocation is not in good faith. There will be a settlement regardless of whether the Settling Parties' proposed allocation is approved.

## II. The settlement amount is made wholly irrespective of actual length of detention.

Further evidence of bad faith is the fact that Plaintiff's attorney, Loevy & Loevy, has simultaneously settled eight separate reversed-conviction cases involving Defendant Guevara with Cook County and various former Assistant Cook County State's Attorneys, including this one, each for the exact same amount – $3,100,000, with 3,000,000 allocated to each respective plaintiff's pretrial detention damages attendant to Fourth Amendment malicious prosecution claims and $100,000 to attorneys' fees and costs. *Compare* Dkt. 145, at ¶ 3, *Abrego v. Guevara, et al.*, No. 23-cv-1740 (N.D. Ill. Nov. 4, 2024); Dkt. 398, at ¶ 2, *Bouto v. Guevara, et al.*, No. 19-cv-2441 (N.D. Ill. Oct. 30, 2024); Dkt. 181, at ¶ 2, *Gecht v. Guevara, et al.,* No. 23-cv-1742 (N.D. Ill. Oct. 30, 2024); Dkt. 106, at ¶ 2, *Kwil v. Guevara, et al.*, No. 23-cv-4279 (N.D. Ill. Oct. 30, 2024); Dkt. 209, at ¶ 2, *Gonzalez v. Guevara, et al.*, No. 22-cv-6496 (N.D. Ill. Oct. 30, 2024); Dkt. 198, at ¶ 2, *Martinez v. Guevara, et al.*, No. 23-cv-1741 (N.D. Ill. Oct. 23, 2024); and Dkt. 74, at ¶ 2, *Kelly v. Guevara, et al.*, No. 24-cv-5354 (N.D. Ill. Nov. 4, 2024) *with* Dkt. 215, at ¶ 2, *Rodriguez v. Guevara, et al.*, No. 22-cv-6141 (N.D. Ill. Oct. 30, 2024). The settlement amount of $3,100,000 to each individual plaintiff for their time in pretrial custody was wholly unrelated to their actual time in pretrial custody, as illustrated below:

| Eruby Abrego | 2,009 days in pretrial detention |
| Robert Bouto | 1,175 days in pretrial detention |
| David Gecht | 387 days in pretrial detention |

12

| Richard Kwil | 7 days in pretrial detention[3] |
|---|---|
| Alfredo Gonzalez | 585 days in pretrial detention |
| John Martinez | 912 days in pretrial detention |
| Thomas Kelly | 912 days in pretrial detention |
| Daniel Rodriguez | 287 days in pretrial detention |

And, of course, in each of these cases, the County Defendants were alleged to have been culpable in the same way that ASA Walsh was alleged to have been culpable here—through each of their alleged roles in the coercion of each plaintiff's confession and/or a witness statement—and so they are every bit as responsible for each plaintiff's post imprisonment as they were for each plaintiff's pretrial detention. *See* Dkt. 166, at ¶¶ 183-185, *Abrego*, No. 23-cv-1740 ("Prosecutor Defendant…forced Plaintiff to make false statements involuntarily and against his will, which incriminated him and which were used against him in criminal proceedings," "used physical violence and extreme psychological coercion," "fabricated a confession, which was attributed to Plaintiff and used against Plaintiff in his criminal proceedings, in violation of Plaintiff's right to a fair trial protected by the Fourteenth Amendment."); Dkt. 256, at ¶ 18, *Bouto*, No. 19-cv-2441 (Prosecutor Defendant "conspired with the Defendant Officers, prior to the existence of probable cause to believe Plaintiff had committed a crime, and while acting in an investigatory capacity, to conceal and fabricate evidence, manipulate witness testimony, and maliciously prosecute Plaintiff")[4]; Dkt. 95, at ¶¶ 158-160, *Gecht,* No. 23-cv-1742 ("Prosecutor Defendants…forced Plaintiff to make false statements involuntarily and against his will, which incriminated him and which were used against him in criminal proceedings," "used physical violence and extreme psychological coercion," "fabricated a confession, which was attributed to Plaintiff and used

---

[3] Kwil's suit alleges he was wrongfully convicted of a murder, which he was arrested for on March 1, 1999, and convicted of on March 24, 2000, for a total of 389 days in pretrial detention. However, 7 days after being taken into custody on the murder charge, Kwil was arrested on March 8, 1999, for an unrelated armed robbery/home invasion to which he plead guilty on October 6, 2000. Thus, Kwil's actual recoverable pretrial detention damages should be limited to the 7 days he was held before being arrested for the robbery/home invasion.

[4] Moreover, on September 30, 2024, Defendants' motion to dismiss Plaintiff Bouto's wrongful detention claim was dismissed with prejudice. (Dkt. 386, at 20-21). Thus, the "claim" settled with the County Defendants no longer exists.

13

against Plaintiff in his criminal proceedings, in violation of Plaintiff's right to a fair trial protected by the Fourteenth Amendment."); Dkt. 50, at ¶¶ 147-149, *Kwil*, No. 23-cv-4279 ("Prosecutor Defendants…forced Plaintiff to make false statements involuntarily and against his will, which incriminated him and which were used against him in criminal proceedings," "used physical violence and extreme psychological coercion," "fabricated a confession, which was attributed to Plaintiff and used against Plaintiff in his criminal proceedings, in violation of Plaintiff's right to a fair trial protected by the Fourteenth Amendment."); Dkt. 107, at ¶¶ 222-224, *Gonzalez*, No. 22-cv-6496 ("Prosecutor Defendant…forced Plaintiff to make false statements involuntarily and against his will, which incriminated him and which were used against him in criminal proceedings," "used physical violence and extreme psychological coercion," "fabricated a confession, which was attributed to Plaintiff and used against Plaintiff in his criminal proceedings, in violation of Plaintiff's right to a fair trial protected by the Fourteenth Amendment."); Dkt. 70, at ¶¶ 140-142, *Martinez*, No. 23-cv-1741 ("Prosecutor Defendant…forced Plaintiff to make false statements involuntarily and against his will, which incriminated him and which were used against him in criminal proceedings," "used physical violence and extreme psychological coercion," "fabricated a confession, which was attributed to Plaintiff and used against Plaintiff in his criminal proceedings, in violation of Plaintiff's right to a fair trial protected by the Fourteenth Amendment."); and Dkt. 47, at ¶¶ 144-146, *Kelly*, No. 24-cv-5354 ("Prosecutor Defendant…forced Plaintiff to make false statements involuntarily and against his will, which incriminated him and which were used against him in criminal proceedings," "used physical violence and extreme psychological coercion," "fabricated a confession, which was attributed to Plaintiff and used against Plaintiff in his criminal proceedings, in violation of Plaintiff's right to a fair trial protected by the Fourteenth Amendment.").

   The simultaneous settlement of eight separate reversed-conviction cases for the exact same amounts with the exact same allocations, irrespective of the lengths of detention and despite allegations that the prosecutor defendants' conduct not only allegedly caused each plaintiff's convictions and alleged wrongful

incarcerations demonstrates that the Settling Parties crafted the allocation not as a meaningful reflection of the harms and losses inflicted but rather as a purposeful mechanism to prevent the City Defendants from obtaining any setoff. For all these reasons, the Settling Parties' Amended Joint Motion for Finding of Good Faith Settlement should be denied.

DATED: December 5, 2024

Respectfully Submitted,

| | |
|---|---|
| /s/ Eileen E. Rosen | /s/ James G. Sotos |
| Special Assistant Corporation Counsel | Special Assistant Corporation Counsel |
| *One of the Attorneys for City of Chicago* | *One of the Attorneys for Defendant Officers* |
| | |
| Eileen E. Rosen | James G. Sotos |
| Catherine M. Barber | Josh M. Engquist |
| Theresa B. Carney | Joseph M. Polick |
| Austin G. Rahe | Thomas J. Sotos |
| Lauren M. Ferrise | THE SOTOS LAW FIRM, P.C. |
| ROCK FUSCO & CONNELLY, LLC | 141 W. Jackson Blvd., Suite 1240A |
| 333 W. Wacker, 19th Floor | Chicago, Illinois 60604 |
| Chicago, Illinois 60606 | (630) 735-3300 |
| (312) 474-1000 | jsotos@jsotoslaw.com |
| erosen@rfclaw.com | |

/s/ Timothy P. Scahill
*One of the Attorneys for Defendant Guevara*

Timothy P. Scahill
Steven B. Borkan
BORKAN & SCAHILL, LTD.
20 S. Clark St., Suite 1700
Chicago, Illinois 60603
(312) 580-1030
tscahill@borkanscahill.com