UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL RODRIGUEZ, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:22-CV-06141 |
| | ) | |
| v. | ) | |
| | ) | |
| REYNALDO GUEVARA, JOANN | ) | |
| HALVORSEN as personal | ) | |
| representative of the Estate | ) | |
| of ERNEST HALVORSEN, | ) | |
| ROBERT BIEBEL, | ) | Judge Edmond E. Chang |
| EDWARD MINGEY, LEE EPPLEN, | ) | |
| EDWARD STRANDBURG, LOUIS | ) | |
| RABBIT, NOEL CAPORUSSO, STEVE | ) | |
| GAWRYS, MICHAEL FLEMING, | ) | |
| THE CITY OF CHICAGO, | ) | |
| PATRICK WALSH, and COOK COUNTY, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Back in 1993, Daniel Rodriguez was convicted of first-degree murder for the shooting death of Jose Hernandez, Jr. R. 100, Answer ¶ 1.[1] He was sentenced to 25 years in prison for this crime. R. 235, Resp. Br. at 3. But in 2022, the Cook County Circuit Court vacated Rodriguez's murder conviction, and he was released from prison. Answer ¶ 13.

Rodriguez then brought this lawsuit against Cook County, the City of Chicago, several Chicago Police officers, and Patrick Walsh, a Cook County Assistant State's

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

Attorney.[2] *See* R. 99, Am. Compl. Rodriguez alleges, among other things, that these defendants fabricated witness statements and evidence that implicated him in the Hernandez shooting, and also used physical and psychological abuse to force Rodriguez to confess to the crime. *Id.* Rodriguez claims that this false evidence was then used to convict him of murder. *Id.* ¶ 91. Based on these allegations, Rodriguez brought a variety of claims, including federal claims under 42 U.S.C. § 1983 (and corresponding constitutional rights) for malicious prosecution, due process violations, and coerced confession, and Illinois state law claims for malicious prosecution and intentional infliction of emotional distress. *Id.* at 36–49.

Now, Rodriguez has agreed to settle all of his claims against Cook County and former state prosecutor Patrick Walsh (that is, the County Defendants). R. 215-1, Settlement Agreement at 1. Those settling parties have moved for the Court to find that their settlement agreement was made in good faith. R. 215, Mot. But the City of Chicago and the Chicago police officer defendants (all together, the City Defendants) argue that the settlement reflects bad faith because it improperly allocates the entire payment to Rodriguez's *pretrial*-detention damages connected with his Fourth Amendment malicious prosecution claim. Resp. Br. at 9–15. That allocation would prevent the City Defendants from obtaining any setoff for Rodriguez's *post*-conviction incarceration damages. *Id.* at 9–11. On review of the filings and the circumstances, the City Defendants are correct: the settlement's payment allocation is grossly unfair

---

[2]The Court has jurisdiction over the federal claims under 28 U.S.C. § 1331 and has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

and has no good-faith basis. So the settling parties' motion for a finding of good faith settlement is denied.

## I. Background

On May 11, 1991, Daniel Rodriguez was arrested for murder in connection with the shooting death of Jose Hernandez, Jr. Am. Compl. ¶ 57; Resp. Br. at 3. Though Rodriguez was released on bond on September 27, 1991, his bond was later revoked when he was arrested again almost one year later, on September 15, 1992, for an unrelated armed-robbery charge. Resp. Br. at 3. Rodriguez was convicted on that armed robbery charge on February 10, 1993, and was sentenced to 10 years in prison. *Id.* Then, on July 29, 1993, Rodriguez was convicted on the earlier-brought first-degree murder charge for the Hernandez shooting. Am. Compl. ¶ 99; Resp. Br. at 3. He was sentenced to 25 years in prison for this conviction, which would run consecutive to the armed-robbery sentence. Resp. Br. at 3. Finally, on August 2, 1993, he was convicted for possessing contraband in Cook County Jail and received an additional four-year sentence, concurrent with his other two sentences. Resp. Br. at 3.

Decades later, in 2020, Rodriguez filed a Petition for Relief from Judgment, claiming that he was wrongfully convicted of murder based on fabricated witness testimony and his own coerced, false confession. Answer ¶ 114. Two years later, in April 2022, after the state prosecutor's office withdrew its opposition to Rodriguez's petition, the Cook County Circuit Court vacated his conviction. *Id.* ¶¶ 114–15.

After he was released from prison, Rodriguez brought this lawsuit against various defendants, including the City of Chicago, Cook County, and several Chicago

Police officers and Cook County Assistant State's Attorneys who were involved in investigating and prosecuting his case. *See* Am. Compl. Rodriguez alleges that Reynaldo Guevara, Ernest Halvorsen, and other Chicago Police officers knowingly fabricated witness statements and identifications implicating Rodriguez in the Hernandez murder. *Id.* at 8–11. And he also claims that Patrick Walsh and other unnamed Cook County Assistant State's Attorneys personally helped with this evidence fabrication. Am. Compl. ¶ 56. Rodriguez then alleges that officers Guevara and Halvorsen forced him to confess to the murder by repeatedly punching him, threatening to put his children in foster care, and threatening to plant illegal items on his partner. *Id.* ¶ 71. Again, he asserts that the state prosecutors helped the officers force Rodriguez to confess. *Id.* ¶ 160.

Based on these allegations, Rodriguez brought federal claims against the defendants under 42 U.S.C. § 1983 for violating his due process rights, coercing a false confession, maliciously prosecuting and unlawfully detaining him, failing to intervene, and conspiring to violate his constitutional rights. *Id.* at 36–42. He also brought Illinois state law claims for malicious prosecution, intentional infliction of emotional distress, willful and wanton conduct, and civil conspiracy. *Id.* at 45–49. Finally, Rodriguez brought a *Monell* claim under § 1983 and a state law respondeat superior claim against the City of Chicago, as well as a claim for indemnification against both the City of Chicago and Cook County. *Id.* at 42–45.

Now, Rodriguez has entered into an agreement to settle all of his claims against the County Defendants. Settlement Agreement at 1. The agreement provides

4

that the County Defendants will pay Rodriguez $3,100,000—with $3,000,000 allo-cated to Rodriguez's injury of *pretrial* detention resulting from the federal malicious prosecution claim, and $100,000 going to attorneys' fees associated with litigating the claims against the County Defendants. *Id.* ¶ 4.3. The settling parties move for the Court to find that their settlement agreement was made in good faith. *See* Mot. But the City Defendants oppose this motion, arguing that the agreement was not made in good faith because it unfairly allocates the entire payment to Rodriguez's *pretrial-*detention injury in order to prevent the City Defendants from getting a damages set-off for any award arising from the *post*-conviction imprisonment. Resp. Br. at 3.

## II. Legal Standard

The statute that governs here is the Illinois Joint Tortfeasor Contribution Act. Generally speaking, the Act creates a statutory right of contribution where "2 or more persons are subject to liability in tort arising out of the same injury" and where one of the tortfeasors "has paid more than his pro rata share of the common liability," 740 ILCS 100/2(a), 2(b). One purpose of the Act is to prevent the saddling of one tortfeasor with the unfair burden of paying more than his "pro rata share." *Id.* To put that pur-pose into action, the Act gives the unfairly burdened tortfeasor the right to sue the others for contribution. *Id.* But it is easy to see how the right to contribution can end up undermining another salutary goal: the promotion of settlement agreements. A tortfeasor considering whether to settle a case would think twice about doing so if the tortfeasor were to remain vulnerable to a contribution suit from a co-defendant.

5

Recognizing this, the Act provides that a tortfeasor who has settled with the plaintiff in "good faith" is "discharged from all liability for any contribution to any other tortfeasor." 740 ILCS 100/2(c), (d). Put another way, the Act extinguishes the right of contribution if the tortfeasor and the plaintiff have entered into a good-faith settlement. The settling tortfeasor and the plaintiff may ask a court to make a finding of a good-faith settlement in order to confirm the end of the remaining defendant's right to contribution. *Fox ex rel. Fox v. Barnes*, 2013 WL 2111816, at *6–9 (N.D. Ill. May 15, 2013).

As the first step in evaluating a settlement, the settling parties carry "the initial burden of making a preliminary showing of good faith," which can be proven by "the existence of a legally valid settlement agreement." *Johnson v. United Airlines*, 784 N.E.2d 812, 820 (Ill. 2003). "[P]roof of consideration [has been] held to be *prima facie* evidence of validity" and therefore creates a "presumption" of good faith. *Id.* at 819. After that preliminary showing is made, "the burden shifts to [the non-settling party] to prove the absence of good faith by a preponderance of the evidence." *Piercy v. Whiteside Cty., Illinois*, 2016 WL 1719802, at *4 (N.D. Ill. Apr. 29, 2016) (citing *Johnson*, 784 N.E.2d at 820).

To evaluate whether a settlement was negotiated in good faith, trial courts primarily consider four factors: (1) "whether the amount paid by the settling tortfeasor was within the reasonable range of the settlor's fair share"; (2) "whether there was a close personal relationship between the settling parties"; (3) whether the plaintiff sued the settlor"; and (4) "whether a calculated effort was made to conceal

6

information about the circumstances surrounding the settlement agreement." *Wreglesworth ex rel. Wregleswroth v. Arctco, Inc.*, 740 N.E.2d 444, 449 (Ill. App. Ct. 2000) (cleaned up). No one factor is dispositive on its own. *Id.* But even if those factors tip in favor of good faith, a court may nonetheless find that a settlement falls short of good faith if the parties engaged in "wrongful conduct, collusion, or fraud" or if the agreement "conflicts with the terms of the Act or is inconsistent with the policies underlying the Act." *Johnson*, 784 N.E.2d at 821; *see also In re Guardianship of Babb*, 642 N.E.2d 1195, 1203 (Ill. 1994); *Dubina v. Mesirow Realty Dev., Inc.*, 756 N.E.2d 836, 840 (Ill. 2001). Remember that the policies promoted by the Contribution Act are the "encouragement of settlements" and (at the same time) "the equitable apportion-ment of damages among tortfeasors." *Bulson v. Helmold,* 2018 WL 5729752, at *2 (N.D. Ill. Nov. 2, 2018). Ultimately, the trial court must exercise sound discretion and consider "the totality of the circumstances." *Johnson*, 784 N.E.2d at 821.

### III. Analysis

Applying those principles here, there is a *preliminary* showing of good faith because the settlement agreement provides for consideration on both sides: the County Defendants agree to pay Rodriguez and his lawyers (the law firm Loevy & Loevy) $3,100,000 in return for a general release and discharge of any and all claims that Rodriguez may have against them. Settlement Agreement at 1–2.

It is also true that some of the four factors set forth in *Wreglesworth*, 740 N.E.2d at 449, point in favor of a good-faith finding. *First*, under the agreement, the County Defendants would provide Rodriguez $3,000,000 for his injury of pretrial

detention based on his Fourth Amendment malicious prosecution claim. Settlement

Agreement ¶ 4.3. A payment of $3,000,000 for the 287 days[3] that Rodriguez spent in

pretrial detention in connection with his murder charge is on the high side, even when

compared to similar wrongful conviction cases.[4] That said, the City Defendants do

not argue that the amount is *unreasonably* high. And there have been other wrongful

conviction cases with higher awards.[5] Indeed, the City Defendants really would have

no basis to object to a supposedly too-high settlement in Rodriguez's favor. So the first

factor points in favor of good faith.

---

[3]The settling parties claim that Rodriguez spent 2.2 years in wrongful pretrial detention. But that number is off. Rodriguez was arrested for murder on May 11, 1991, and was convicted of murder on July 29, 1993, so yes 2.2 years passed between his arrest and the murder conviction. But Rodriguez did not spend all of that time wrongfully detained. He was released on bond on September 27, 1991, 139 days after he was arrested for murder. And then Rodriguez was detained again on an *unrelated* armed-robbery charge on September 15, 1992. He pleaded guilty to that second charge on February 10, 1993, so he had another 148 days of pretrial detention. And that armed-robbery conviction was never vacated, so between February 10, 1993, and Rodriguez's murder conviction on July 29, 1993, he was properly detained (and then imprisoned). Thus, in total, as the City Defendants correctly note, Rodriguez spent 287 days, not 2.2 years, in pretrial detention.

[4]The settling parties provide several comparators. For example, in *Rivera v. Guevara*, No. 12-cv-4428 (N.D. Ill. 2018), the plaintiff recovered $17,000,000 in damages for the 21 years that he served in prison ($1,017,167 per year after adjusting for inflation). And in *Johnson v. Guevara*, No. 05-cv-1042 (N.D. Ill. 2012), the plaintiff recovered $21,000,000 for the 12 years he was wrongfully imprisoned ($2,574,950 per year after inflation adjustment). Here, the agreement would provide Rodriguez $3,000,000 for the 287 days he spent in pretrial detention due to the murder arrest ($3,815,331 per year). So the payment here would be significantly higher than the amounts in the other cases involving Defendant Guevara that the settling parties cite.

[5]For example, the jury in *Fox v. Hayes*, No. 1:04-cv-7309 (N.D. Ill. 2007), awarded the plaintiff $2,016,000 for the 273 days he was incarcerated ($4,098,871 per year after inflation). And the jury in *Brown v. City of Chicago*, No. 1:19-cv-4082 (N.D. Ill. 2024) awarded the plaintiff $50,000,000 for his 10 years in prison.

*Second*, there is no personal relationship between the settling parties, at least none that would give rise to any suspicion of bad faith. They are separately represented by counsel, and counsel conducted the settlement negotiations at arms-length. Settlement Agreement ¶¶ 10–11. *Third*, of course Rodriguez did sue the County Defendants. *See* Am. Compl. And *fourth*, there was no unusual concealment of the settlement agreement, which is attached to the motion. *See* Settlement Agreement. The City Defendants were not parties to the settlement negotiations between Rodriguez and the County Defendants, but there is nothing unusual about keeping settlement negotiations close to the vest in this context until finalized. So the *Wreglesworth* factors do seem to point—at least initially—in favor of good faith.

But the proposed good-faith finding is fatally undermined by the allocation of *all* of the $3 million settlement (that is, the proceeds not slated for attorney's fees) toward Rodriguez's *pretrial*-detention damages flowing from his Fourth Amendment malicious prosecution claim. Settlement Agreement ¶ 4.3. The result of that allocation is that the City Defendants would be on the hook—all by themselves—for any damages that a jury may award Rodriguez for his much, much longer *post*-conviction incarceration. Not surprisingly, Rodriguez's post-conviction incarceration comprises the vast bulk of the injury that he suffered. Given that Rodriguez spent 12½ years in post-conviction incarceration for the allegedly wrongful murder conviction—compared to 287 days of pretrial detention—a jury award for the post-conviction incarceration could amount to several millions of dollars. Resp. Br. at 3. So the allocation of the payment in the agreement runs directly counter to the Contribution Act's goal

of promoting "the equitable apportionment of damages among tortfeasors." *Bulson,* 2018 WL 5729752, at *2.

Worse, the proposed assignment of the settlement proceeds to the pretrial detention is particularly unfair because the very same allegations in Rodriguez's complaint that would make the County Defendants liable for his pretrial detention would also make them liable for the post-conviction damages. The complaint alleges that state prosecutor Walsh and other prosecutors "manufactured and fabricated coerced confessions and statements from Plaintiff and other witnesses, and worked to maliciously prosecute Plaintiff for the Hernandez murder." Am. Compl. ¶ 23. Rodriguez also claims that these state prosecutors "used physical violence and extreme psychological coercion in order to force Plaintiff to incriminate himself falsely and against his will in a crime he had not committed." *Id.* ¶ 160. And the Complaint alleges that Walsh and the other prosecutors "participated personally in the interrogations [of witnesses Rivera and Velazquez] and fabricating their false statement that incriminated Plaintiff in the crime." *Id.* ¶ 56. Finally, Rodriguez even asserted that the "State's case hinged upon Rivera's fabricated statement and Plaintiff's false confession. At trial, the State presented no other eyewitness testimony outside of Rivera's falsified account of the shooting." *Id.* ¶ 91. In other words, the County Defendants were alleged to be personally involved in fabricating the witness statement and coercing Rodriguez's false confession that were then integral to convicting Rodriguez of murder. Thus, based on Rodriguez's own allegations, the County Defendants are also liable for his post-conviction incarceration. So it makes no sense for the County

10

Defendants' settlement payment to cover *only* Rodriguez's pretrial detention. The cabining of the settlement amount to only the pretrial detention is a transparent attempt to avoid any setoff of the post-conviction imprisonment damages. The settlement allocation is inequitable and was made in bad faith.

Also, the settlement is not in good faith because it allocates the entire $3 million payment to Rodriguez's Fourth Amendment malicious prosecution claim, rather than also covering his Illinois state law malicious prosecution claim. Settlement Agreement ¶ 4.3. The Complaint's allegations for the Fourth Amendment and state law malicious prosecution claims are almost identical, and the elements of both claims are also almost identical. *See* Am. Compl. at 39–40, 45–46. True, a state law malicious prosecution claim requires that Rodriguez establish that his prosecution ended in a manner that indicates that he was innocent. *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996). But that element is not defendant-specific, so if Rodriguez were to prove that his prosecution ended in that manner, then he would establish this element with respect to *all* of the defendants—both City and County. That means that if Rodriguez can prove a Fourth Amendment malicious prosecution claim against the County Defendants, he should be equally able to prove the state law counterpart to that claim. So there is no legitimate reason for the settlement to cover only the federal claim. Importantly, state law malicious prosecution damages could arguably cover the *full length* of a plaintiff's incarceration, *see St. Paul Fire & Marine Ins. Co. v. City of Zion*, 18 N.E.3d 193, 200 (Ill. App. Ct. 2014), whereas Fourth Amendment malicious prosecution damages cover only—no surprise here—pretrial

11

detention, *Manuel v. City of Joliet*, 580 U.S. 357, 369 n. 8 (2017) ("[O]nce a trial has occurred, the Fourth Amendment drops out: A person challenging [their conviction] does so under the Due Process Clause of the Fourteenth Amendment."). That suggests that the settling parties intentionally chose not to include the state law malicious prosecution claim in the settlement allocation so that the payment could be limited to covering only pretrial detention damages. Again, that prevents the City Defendants from obtaining any setoff for post-conviction incarceration damages. This choice of allocation also signals bad faith.

The City Defendants also argue that the settlement payment is untethered to the amount of time that Rodriguez actually spent in pretrial detention. Resp. Br. at 12. That too is correct and provides further evidence of bad faith. As the City Defendants note, Rodriguez's counsel, the law firm of Loevy & Loevy, has contemporaneously settled seven other wrongful conviction cases involving Defendants Guevara, Cook County, and state prosecutors. *Id.* In each and every one of those cases, the settlement agreements provide for the exact same payment as is agreed to here—$3,100,000, with $3,000,000 allocated to each plaintiff's *pretrial* detention damages in connection with Fourth Amendment malicious prosecution claims and $100,000 to attorneys' fees and costs. *Id.* at 12–13. Despite the payment amounts being identical, the length of time that the plaintiffs in these eight cases (including this one) spent in pretrial detention varies widely, ranging from just seven days all the way to 2,009 days.[6] This

---

[6]*See Abrego v. Guevara, et al.*, No. 23-cv-01740 (N.D. Ill. Nov. 4, 2024), R. 1 ¶¶ 61, 117, 127, R. 145 ¶ 3; *Bouto v. Guevara, et al.*, No. 19-cv-02441 (N.D. Ill. Oct. 30, 2024), R. 394 ¶ 2;

comparison demonstrates that the settlement amount and allocation in this case are not designed to reflect the actual harm that Rodriguez suffered. Instead, the settlement was crafted to prevent the City Defendants from obtaining a reasonable setoff.

The settling parties counter that even if the settlement payment's apportionment is improper, that should not outweigh the other factors counselling in favor of a finding of good faith. Reply Br. at 5, 11–12. That argument misses its mark. When apportionment is as grossly unfair as it is here, courts have found that a finding of bad faith is warranted, even if the settling parties have made a preliminary showing—and that is all it is, a *preliminary* showing—of good faith and even if some of the other relevant factors are met. For example, in *Koh v. Village of Northbrook*, 2020 WL 6681352 (N.D. Ill., Nov. 12, 2020)—a case presenting claims for fabricated evidence and a coerced confession—the settling parties made a preliminary showing of good faith, and the settlement satisfied several other factors. *Id.* at *4–6. Nonetheless, this Court concluded that the settlement was entered in bad faith because the agreement allocated no money for the plaintiff's Fifth Amendment coerced-confession claim, thereby denying the non-settling defendants any setoff on that claim and leaving them responsible for the entirety of any damages that a jury might award at trial. *Id.* at *5–6. Similarly, in *Piercy v. Whiteside County*, 2016 WL 1719802 (N.D. Ill. April

*Gecht v. Guevara, et al.*, No. 23-cv-01742 (N.D. Ill. Oct. 30, 2024), R. 181 ¶ 2; *Kwil v. Guevara, et al.*, No. 23-cv-04279 (N.D. Ill. Oct. 30, 2024), R. 106 ¶ 2; *Gonzalez v. Guevara, et al.*, No. 22-cv-06496 (N.D. Ill. Oct. 30, 2024), R. 209 ¶ 2; *Martinez v. Guevara, et al.*, No. 23-cv-01741 (N.D. Ill. Oct. 23, 2024), R. 198 ¶ 2, *Kelly v. Guevara, et al.*, No. 24-cv-05354 (N.D. Ill. Nov. 4, 2024), R. 74 ¶ 2. Motions for findings of good-faith settlement are pending in all seven of these other cases, so this Opinion appears to be the first decision on whether any of these identically structured payouts are in good faith.

13

29, 2016), the Court refused to find that the settlement agreement was in good faith because the agreement artificially separated the non-settling defendants' liability from that of the settling defendants, intentionally precluding a setoff. *Id.* at *5. The same principles apply here. It appears that the settling parties deliberately structured the settlement agreement to preclude the City Defendants from obtaining any kind of reasonable setoff for damages arising out of post-conviction imprisonment, even though that structure is not supported by Rodriguez's allegations or the actual injury that he suffered.[7] So the other factors that point in favor of good faith are readily overwhelmed: this is a bad-faith settlement allocation and cannot stand.

Finally, the settling parties argue that denying a finding of good faith here would undermine the Contribution Act's goal of encouraging settlements. Reply Br. at 11–12. But a provision in the settlement agreement here refutes that contention. Section 4.5 of the agreement says that the settlement "shall not be affected … and remain[s] valid and fully enforceable" even if the Court rejects the payment allocation. Settlement Agreement ¶ 4.5. That means that by rejecting the Settling Parties' payment allocation, the Court is *not* discouraging settlement. Rodriguez and the County Defendants have agreed to settle the case even if the allocation of the payment must change and must cover both pretrial detention and post-conviction incarceration. Thus, the Court's decision upholds both aims of the Contribution Act—

---

[7]It is worth noting that Rodriguez's law firm here was also the counsel for the plaintiffs in *Koh* and *Piercy*. One unfortunate way to lose credibility in the courts is to repeatedly present bad-faith settlements for approval.

14

encouraging settlement and promoting fair apportionment of damages among tort-feasors. And even if there were no savings provision in the settlement agreement, the allocation here is so transparently entered in bad faith that the Court has zero interest in encouraging *this* type of settlement. The settling parties' joint motion for finding of good-faith settlement is denied.

## IV. Conclusion

The amended joint motion for finding of good faith settlement, R. 215, is denied. The settling parties shall file a status report on or before April 7, 2025, proposing their next steps (for example, a renegotiated allocation and then conferral with the City Defendants on whether there would be opposition to a finding of good faith based on the new allocation).

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 20, 2025